# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

STEVEN SIEGLER (SS-1224)
**The Law Office of Steven Siegler, Esq.**
197 Route 18 South, Suite 3000
East Brunswick, New Jersey 08816
(732) 214-2648
Attorneys for Plaintiff

| | |
|---|---|
| ANTHONY MAJER,<br><br>    **Plaintiff**,<br><br>v.<br><br>TOWNSHIP OF LONG BEACH, DIANNE C. GOVE, RALPH A. BAYARD, FRANCIS A. ROWEN, RON PINGARO, and RICHARD J. SHACKLETON, in their individual capacities under color of State law, and EUGENE KELLY,<br><br>    **Defendants**. | CIVIL ACTION NO. 3:06-cv-2919 (MLC/TJB)<br><br>**FIRST AMENDED COMPLAINT and JURY DEMAND** |

Anthony P. Majer, by way of Complaint against the Defendants, herein states and alleges as follows:

**STATEMENT OF THE CASE**

1.      This is a civil rights action brought by Mr. Anthony Majer, a 52 year old, permanently disabled resident of the Township of Long Beach, New Jersey (the "Township"), to rectify the injustice he has suffered at the hand of the Township and its officials, who have instituted, maintained and implemented corrupt policies and ordinances designed to deprive Mr. Majer of his right to free speech and drive him from his home, which he shares with his two dependent sons.

2. Specifically, the Township and its officials commenced and continued an outrageous, despicable, year long campaign of retaliation against Mr. Majer because he complained about the health and safety code violations committed by his neighbor, Defendant Eugene Kelly, a long-time resident of the Township whose brother and friends are Township employees, and because Mr. Majer complained about the Township's selective and discriminatory enforcement of its signage and right-of-way ordinances and its gross negligence in protecting the public.

3. This retaliation campaign includes, but is not limited to, the unlawful confiscation of Mr. Majer's "for rent" and "open house for rent" signs, the issuance of baseless Notices of Violation to Mr. Majer, the amendment of ordinances without any rational basis in order to prevent Mr. Majer from renting his home and securing needed income, and the effecting a "local ordinance arrest" upon Mr. Majer and the issuance of court summonses.

4. For these wrongs, Mr. Majer seeks injunctive relief, compensatory and punitive damages in the amount of $5,000,000, reasonable attorney's fees, costs, and such other relief as the Court deems equitable and just.

## JURISDICTION AND VENUE

5. This case arises under the United States Constitution, the Constitution of the State of New Jersey, and the laws of the United States and the State of New Jersey, and therefore presents a federal question within this Court's jurisdiction under Article III of the federal Constitution and 28 U.S.C. §§ 1331 and 1343. The Court has supplemental jurisdiction over Mr. Majer's state law claims pursuant to 28 U.S.C. § 1367.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), in that the events or omissions giving rise to these claims occurred in the District of New Jersey.

## PARTIES

7.      Mr. Anthony P. Majer ("Plaintiff" or "Mr. Majer") is a citizen of the United States and a resident of the State of New Jersey with a principal residence at 18 East Sand Dune Lane, Township of Long Beach, New Jersey 08008, and is entitled to all the rights, privileges, and immunities secured by the Constitution and laws of the United States and the State of New Jersey.

8.      The Township of Long Beach, New Jersey (the "Township") is a policy-making governmental body, organized under the laws of the State of New Jersey.

9.      Defendant DiAnne C. Gove is a resident of the State of New Jersey and was, at all relevant times herein, the Mayor of the Township and the Commissioner in charge of the Township Police Department, the Construction Department, Land Use Board, Clerk's Office, Municipal Court and Department of Public Safety, and acted in her individual capacity under color of State law.

10.     Defendant Ralph H. Bayard is a resident of the State of New Jersey and was, at all relevant times herein, a Commissioner of the Township and its Director of Revenue and Finance, and acted in his individual capacity under color of State law.

11.     Defendant Francis A. Rowen is a resident of the State of New Jersey and was, at all relevant times herein, a Zoning Official of the Township, and acted in his individual capacity under color of State law.

12.     Defendant Ron Pingaro is a resident of the State of New Jersey and was, at all relevant times herein, a Construction Official of the Township, and acted in his individual capacity under color of State law.

13.     Defendant Richard Shackleton, Esq. is a resident of the State of New Jersey and was, at all relevant times herein, Municipal Attorney for the Township, and acted in his individual capacity

under color of State law.

14. Defendant Eugene Kelly is a resident of the State of New Jersey with a residence at 9000 Beach Avenue, 2nd Floor, Peahala Park, New Jersey 08008, and is liable for certain torts alleged herein.

## PERTINENT FACTS

15. Mr. Majer purchased his current residence on Long Beach Island in or around June 2000.

16. Each summer, Mr. Majer rents out his duplex beach house in order to derive income and help defray the cost of his mortgage and property taxes.

17. Each year, in order to advertise his rental unit, Mr. Majer employs "Open House – For Rent" and "For Rent" signage in accordance with the relevant Township ordinance.

18. As of June 15, 1996, the Township instituted a "Temporary Open House Sign Trial," which constituted an exception to the Township's signage ordinance. The "Temporary Open House Sign Trial" stated, in part:

> It will be permissible to have a portable sign at the street end with a directional arrow on it and another portable sign at the open house property. The portable signs can be no larger than the normal real estate signs but can be either a double-sided sign or an "A" frame type double sign.
> . . .
> There is no particular end date to this trial. If everyone cooperates and there are no complaints, we will continue the trial without a specific end date.

19. In accordance with the "Temporary Open House Sign Trial," it has been the pattern and practice of the Township's residents and business owners to place "Open House" signs in the public right of way, i.e., at street ends and on their properties, for many years.

20. In 2003, Mr. Majer was struck by a drunken hit and run driver while riding a bicycle on Long Beach Island. The accident left him permanently disabled with a severe spinal cord injury. Due to this accident, Mr. Majer's reliance on the income from his summer rental unit is critical to his ability to keep his home.

21. In or around March 2004, Mr. Majer called the police and filed a report about his neighbor, Defendant Eugene Kelly. Specifically, Mr. Kelly allowed his dog to run loose and defecate on the lawn of his elderly neighbors, Mr. and Mrs. Rohr. The fecal matter left on the Rohr lawn by the Kelly dog had accumulated over many months and filled a thirty pound garbage bag. Mr. Kelly's violation was a health and safety concern.

22. On previous occasions, Mr. Majer had attempted to resolve this issue with Mr. Kelly informally, with no success.

23. Mr. Kelly is a long-time resident of the Township and his family has lived there for over 75 years. Mr. Kelly's brother and friends work for the Township.

24. Over the next two months, Mr. Majer filed additional police reports and complaints against Mr. Kelly for letting his dog run loose and for improper disposal of fecal matter.

25. Mr. Kelly responded by threatening and intimidating Mr. Majer on many occasions, including, but not limited to, May 14, 2005, at which time Mr. Kelly approached Mr. Majer in the street and brushed against his shoulder, saying "move me if you have the fucking balls." Mr. Kelly continued by calling Mr. Majer a "fucking asshole" and saying that Mr. Majer would not be able to live "around here" anymore.

26. On or about May 18, 2004, Mr. Majer and Mr. Kelly attended a mediation at the Township Municipal Court. Mr. Kelly remained defiant, stating that his family had been on the Island

since 1929 and that Mr. Majer should "stay out of his business" and that he did not know who he was "messing with."

27.     Despite the previous warnings from Township Police, Mr. Kelly continued to fail to pick up after his dog, prompting Mr. Majer to file additional complaints.  Mr. Kelly responded with more threats and intimidation.

28.     On or about May 23, 2005, Mr. Majer called the police regarding Mr. Kelly's dog running loose and his improper disposal of fecal matter.  Mr. Majer signed two complaints against Mr. Kelly on these grounds.

29.     In response, Mr. Kelly threatened Mr. Majer by stating that he would "not be able to live around here anymore" or "rent his property any more."  Mr. Majer filed a harassment complaint against Mr. Kelly after receiving this threat.

30.     The court date for the two most recent complaints was July 5, 2005.

31.     On or about June 28, 2005, exactly one week before Mr. Kelly's municipal court trial, John Jones, Superintendent of the DPW, went to Mr. Majer's street and confiscated one of Mr. Majer's "Open House – For Rent" signs.

32.     The same day, the Township mailed Mr. Majer a Notice of Violation on the grounds that his "Open House – For Rent" sign violated Township Ordinance 205-45 in that it was allegedly placed in the right of way.  The Notice permitted Mr. Majer fifteen (15) days to correct the violation.

33.     However, on June 29, 2008, the day _after_ the Notice of Violation was mailed to Mr. Majer, a day _before_ he received it (at the earliest), and 12 or 13 days _prior_ to the end of the 15-day cure period, the Director of the Township Construction and Zoning Department ("CZD"), Defendant Pingaro, personally went to Mr. Majer's home and street and confiscated all three of Mr. Majer's

signs.

34. Mr. Majer's signs were in compliance with the long-honored "Temporary Open House Sign Trial" in effect since June 1996, and in compliance with the pattern and practice of the vast majority of other residents and business owners who post signs to advertise home rentals and sales.

35. Further, upon information and belief, neither the Township nor the individual officers thereof enforced Township Ordinance 205-45 against any other person or entity at the time Mr. Majer's sign was seized.

36. Mr. Majer, who was still unaware at that point of any involvement by the Township in the taking of his signs, called the Township Police Department to report stolen property. On or about June 30, 2005, a Township police officer advised Mr. Majer that the signs had been taken by the Township. Mr. Majer then went to the CZD with two police officers and requested his signs back.

37. The CZD employees gave Mr. Majer the signs back but told him that he could not place them in the public right-of-way anymore. They made it clear that Mr. Majer was not to put out his signs anywhere. One of the employees warned Mr. Majer that if he put his signs out again, the employee would take them.

38. On June 30, 2005, Mr. Kelly stated to Mr. Majer, after the sign was seized, words to the effect that "You see what happens, you fat fuck, you're out of business now!" Mr. Kelly continued, stating words to the effect of "we can settle this another way, why bother going to Court." In addition, he physically threatened Mr. Majer by stating "I'll fucking kill you next time."

39. On or about July 7, 2005, Mr. Majer filed a complaint of harassment against Mr. Kelly based on his threatening and intimidating behavior on June 30, 2005.

40. On or about July 10, 2005, Mr. Kelly, upon information and belief, made a false statement to the Township police that Mr. Majer "lived in a shack with no bathroom." The police, acting on Mr. Kelly's complaint, send three patrol cars to Mr. Majer's residence with lights flashing, at 9:30 p.m., to investigate whether Mr. Majer's house had a bathroom. Upon information and belief, there is no police report concerning this incident.

41. On or about July 18, 2005, Mr. Kelly, upon information and belief, made false statements to the CZD and the Long Beach Island Health and Safety Department about the state of Mr. Majer's bathrooms. The Township and/or its agents then conducted another inspection of Mr. Majer's bathroom. The inspection then broadened in scope to include a search for violations in other rooms in Mr. Majer's home. The Township and/or its agents questioned the validity of Mr. Majer's Certificate of Occupancy, and hinted that his property taxes would be raised.

42. On or about July 19, 2005, Mr. Majer filed another report regarding Mr. Kelly's dog running loose.

43. On or about September 7, 2005, the Township Municipal Court conducted a mediation of Mr. Majer's and Mr. Kelly's disputes and a Consent Agreement was reached, whereby Mr. Kelly agreed to clean up his dog's waste and not permit it to run loose. The parties also agreed to cease and desist all contact with each other. Mr. Kelly has repeatedly violated this order.

44. On or about September 29, 2005, Mr. Majer met with officials of the Township, including its Chief of Police and Defendant Shackleton, regarding the Notice of Violation Mr. Majer had received on June 28, 2005 for violating the signage ordinance and the fact that the Township was now questioning the validity of his zoning classification. At that time, Defendant Shackleton stated that the "Temporary Open House Sign Trial" which commenced in 1996 was being withdrawn and

that, henceforward, all "Open House" signs, whether they were advertising open houses "for sale" or "for rent," were banned from street ends. Defendant Shackleton stated that the reason for the change was "safety reasons to prevent the signs from blowing in the wind and striking pedestrians." Defendant Shackleton also stated that the reason for the change was so that Mr. Majer did not feel "discriminated" against.

45. On or about October 4, 2005, the Township issued a letter to all Long Beach Island Real Estate Brokers regarding the new ban on street end signs.

46. On or about October 19, 2005, the Township, acting through its agent, Defendant Rowen, issued Mr. Majer a Notice of Violation for having a sign in the public right of way, an A-frame sign, and a sign on a public curb.

47. In response, Mr. Majer documented fifty (50) similar signage and right-of-way conditions which he believed to be violations in the Township, some of which posed a significant risk to pedestrian safety, as opposed to Mr. Majer's single A-frame sign. He reported these conditions to the Township in several letters written and sent in the last week of October.

48. On October 24, 2005, the Township issued one right-of-way violator, Bay Haven Marina, a Notice of Violation; however, it listed Mr. Majer as "the complainant" in the Notice, a practice which had not been done before , violating Mr. Majer's privacy. Upon information and belief, the other forty-nine conditions reported by Mr. Majer went unaddressed.

49. Mr. Majer's complaints that the laws were being selectively enforced also went unaddressed.

50. On or about November 6, 2005, the Township went to Mr. Majer's property to take pictures of his signage. Other individuals and businesses whom Mr. Majer believed to be in violation

of the Township's signage and right-of-way ordinances, including Defendant Rowen himself, who parked his car in the public right of way, were not investigated in this manner.

51. On or about November 10, 2005, the Township changed the signage ordinance for the second time in six weeks. Now the ordinance prohibited only "Open House – For Rent" signs, while permitting "Open House – For Sale" signs. The Township officials did so knowing that Mr. Majer was the only homeowner in the Township who placed "Open House – For Rent" signs on street ends.

52. The new ordinance contained a "content-based" restriction on free speech and is therefore unconstitutional on its face.

53. On or about November 14, 2005, Mr. Majer wrote to Defendant Gove to complain about the new ordinance banning "for rent" open house signs. To Mr. Majer's dismay, Defendant Gove did not respond.

54. After the Township passed the amendment to the sign ordinance, Mr. Majer continued to exercise his right to free speech regarding what he perceived to be abuse of power, abuse of Township vehicles, misconduct of public officials, and retaliatory legislation.

55. On or about November 26, 2005, the Township and/or its agents dispatched the police to Mr. Majer's home to effect a "local ordinance arrest" upon Mr. Majer because he was displaying an "Open House – For Rent" sign on his street corner. The Township Police Department issued two summonses to Mr. Majer, which are still outstanding to this day.

56. On or about May 16, 2006, the Township and/or its agents sent Mr. Majer a letter outlining his violations of signage and right-of-way ordinances, and demanding that he fix the alleged "violations" or face more serious action.

57.     On or about May 19, 2006, the Township and/or its agents caused a Township street sweeper to dump sand and stones in front of Mr. Majer's home, causing him inconvenience, embarrassment, humiliation, and fear of future retaliation.

## COUNT ONE

### *(Deprivation of Civil Rights/Violation of 42 U.S.C. § 1983*
### *Against the Individual Defendants)*

58.     Plaintiff repeats and realleges each and every allegation set forth above as if recounted at length herein.

59.     Defendants Gove, Bayard, Rowen, Pingaro, and Shackleton, acting in their individual capacities under the color of State law, intentionally deprived plaintiff of rights secured him by the Constitution of the United States and Federal law, including, but not limited to, his rights to freedom of speech and assembly to petition the government for a redress of grievances under the First Amendment to the Constitution of the United States of America.

60.     Defendants deprived Plaintiff of his rights of free speech and assembly by retaliating against him for making complaints about his neighbor and about the Township's selective enforcement of its signage and right-of-way laws and its gross negligence in protecting the public safety.

61.     As a result of defendants' actions, plaintiff has suffered harm, including but not limited to economic losses, *e.g.*, loss of rental income, as well as psychological trauma and the physical sequelae thereof, including TMJ, weight gain, sleeplessness, headaches, and nervousness.

## COUNT TWO

### *(Deprivation of Civil Rights/Violation of 42 U.S.C. § 1983*
### *Against the Township)*

62. Plaintiff repeats and realleges each and every allegation set forth above as if recounted at length herein.

63. Defendant Township deprived plaintiff of his constitutional rights to freedom of speech and assembly. This deprivation resulted from a policy or custom of retaliatory practices instituted, implemented, and encouraged by the individual defendants, whose acts or edicts represented official policy.

64. Defendant deprived Plaintiff of his rights to free speech and assembly by retaliating against him for making complaints about his neighbor, and about the Township's selective enforcement of its signage and right-of-way laws and its gross negligence in protecting the public safety.

65. As a result of defendants' actions, plaintiff has suffered harm, including but not limited to economic losses, *e.g.*, loss of rental income, as well as psychological trauma and the physical sequelae thereof, including TMJ, weight gain, sleeplessness, headaches, and nervousness.

## COUNT THREE

### *(Violation of the New Jersey Civil Rights Act*
### *Against All Defendants)*

66. Plaintiff repeats and realleges each and every allegation set forth above as if recounted at length herein.

67. Defendants violated plaintiff's rights to freedom of speech and assembly under the New Jersey State Constitution, Article 1, paragraphs 6 and 18.

68. Defendants deprived Plaintiff of his rights to free speech and assembly by retaliating against him for making complaints about his neighbor, and about the Township's selective enforcement of its signage and right-of-way laws and its gross negligence in protecting the public safety.

69. Defendants' conduct violated the New Jersey Civil Rights Act, N.J.S.A. 10:6-1, et seq.

70. As a result of defendants' actions, plaintiff has suffered harm, including but not limited to economic losses, *e.g.*, loss of rental income, as well as psychological trauma and the physical sequelae thereof, including TMJ, weight gain, sleeplessness, headaches, and nervousness.

## COUNT FOUR

### *(Conspiracy to Violate Plaintiff's Civil Rights Against All Defendants)*

71. Plaintiff repeats and realleges each and every allegation set forth above as if recounted at length herein.

72. Two or more of the Defendants acted in concert to violate Mr. Majer's state constitutional rights, and then caused one of their number to undertake an overt act which resulted in damage to the Plaintiff.

73. As a result of defendants' actions, plaintiff has suffered harm, including but not limited to economic losses, *e.g.*, loss of rental income, emotional distress, psychological trauma, and pain and suffering.

## COUNT FIVE

### *(Assault against Defendant Kelly)*

74. Plaintiff repeats and realleges each and every allegation set forth above as if recounted

at length herein.

75. On June 30, 2005, Defendant Kelly attempted by physical menace to put Mr. Majer in fear of imminent serious bodily injury.

76. Defendant's conduct constitutes the tort of assault.

77. As a result of Defendant' actions, plaintiff has suffered harm, including but not limited to economic losses, *e.g.*, loss of rental income, emotional distress, psychological trauma, and pain and suffering.

## COUNT SIX

### *(Intentional Infliction of Emotional Distress Against Defendant Kelly)*

78. Plaintiff repeats and realleges each and every allegation set forth above as if recounted at length herein.

79. Defendant's conduct constitutes the tort of intentional infliction of emotional distress.

80. As a result of Defendant' actions, plaintiff has suffered harm, including but not limited to economic losses, *e.g.*, loss of rental income, emotional distress, psychological trauma, and pain and suffering.

## PRAYER FOR RELIEF

**WHEREFORE,** plaintiff prays for judgment against the defendants, including but not limited to:

(a) an Order directing the Township and individual defendants to cease and desist from harassing and/or retaliating against Plaintiff;

(b) an award of compensatory damages for lost rental income and psychological trauma in the amount of $5,000,000;

      (b)    an award of punitive damages or other exemplary damages in an amount to be determined by the trier of fact;

      (c)    an award of reasonable attorneys' fees and all costs of court and interest herein;

      (d)    an award of damages as allowed under 42 U.S.C. § 1983;

      (e)    such other award as allowed by statute, or within the power of this Court to grant.

            **The Law Office of Steven Siegler, Esq.**
            Attorneys for Plaintiff

            By:   s/ Steven Siegler
                   Steven Siegler (SS-1224)

Dated: November 23, 2008

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

            **The Law Office of Steven Siegler, Esq.**
            Attorneys for Plaintiff

            By:   s/ Steven Siegler
                   Steven Siegler (SS-1224)

Dated: November 23, 2008